In the next case, whenever you're ready, it's Jensen v. Utah County, and this is 25-4-1-1-5. All right, Ms. Olson, take your time. Whenever you're ready, we'd like to hear from you. You may want to play around with that microphone. May it please the Court, Caroline Olson on behalf of the defendants, I hope to reserve four minutes for rebuttal. The decision below is an outlier in two respects. First, the Court ruled that a religious organization is entitled to an exemption from the Controlled Substances Act to use psilocybin without regulation or oversight based on a medical exemption that permitted hospitals to study the safety and potential therapeutic benefits of psilocybin in a highly controlled clinical context. Second, the Court enjoined an ongoing criminal prosecution in contravention of Younger's mandate based on two exceptions that could better be described as theoretical rather than practical given the scarcity of cases applying either. This Court can and should reverse both decisions. Unless the Court has a different preference, I plan to start with the plaintiff's argument that we waive Younger arguments based on removal. This Court has not resolved whether removal waives Younger, but two basic tenets of this Court's case law compel the conclusion that it does not. First, waiver ordinarily requires an express disavowal of an intent to invoke Younger. Second, Younger is non-discretionary when the conditions are met. Indeed, this Court has recently described Younger as jurisdictional. That leads to a couple of conclusions. First, if any of the normal rules of waiver apply, they are not the normal rules that apply to normal party litigants of waiver. The standard is much higher if it can be waived at all given the unique structural interests that are protected by Younger. However, removal does not satisfy that standard. Removal, as this Court said in Trant, is voluntary, constitutes consent to have the claim resolved in a federal forum. Defendants are not asking for this Court to override a federal forum adjudicating this case. It is seeking to invoke the separate interest protected by Younger abstention, which is the State's prosecutorial discretion to prosecute actions and the State judiciary's interest in non-interference from federal courts. Reversing the injunction here would fulfill that interest by protecting the ongoing State criminal prosecution from interference by a federal court. Now, I want to make one other point on waiver, which is that the District Court purported to say that there was some kind of weight of authority in favor of removal waiving Younger. And, in fact, I think between the District Court and the plaintiffs, they've marshaled just four cases which have very little analysis, particularly of the comedy and structural interests that Younger protects. But putting that aside, they've cited one circuit court case from the Seventh Circuit that also had very little analysis. But it's distinguishable in this key respect. The Court said in the Seventh Circuit case that it relied on precedent that said Younger abstention is discretionary. Well, this Court's case says that Younger abstention is mandatory when the conditions are satisfied. So that doctrine simply can't cross over to this particular instance. There's no world in which we've waived the arguments to object to an injunction. Indeed, if their argument were correct, it would mean that somehow by removing this action, we granted the District Court a power that it did not otherwise possess. Now, on the merits of Younger itself, I don't see much argument from my friends that the decision was correct. In fact, they devote very little of their brief to that issue. Again, all of the issues here are legal and reviewed de novo. And under that standard, what is before the District Court did not come close, was not even in the vicinity of what constitutes bad faith or irreparable harm sufficient to require, to defeat abstention under Younger. Counsel, can I maybe redirect if you're done with the Younger waiver argument? In your brief, you suggested that the core error here was that the District Court found that the Utah Controlled Substances Act was not generally applicable. And that clearly goes to the motion to dismiss that was litigated below. And then you argue, I believe, that without that free exercise of federal right, that the anti-suit injunction would also fall. Is that true? Is there a world in which we would reverse on one but affirm on the other? Your Honor, that's a fantastic question. It's a decision tree question. So let me explain how I think that this works. So I think if you agree with us on the free exercise issue, we sweep the table. And here's why. Because if there is no federal right at issue, if there are no federal constitutional rights, then an anti-suit injunction cannot issue. And I think the District Court recognized this. And I would point the Court to Act V at 153, Act I at 162, where the Court even said it lacked authority to issue an anti-suit injunction without reaching a determination as to the federal constitutional merits. So if you agree with us on the free exercise issue, my friends have conceded the Fourth Amendment issue falls with that. And so agreeing with us on the free exercise issue requires you to vacate the injunction. And, in fact, you would not need to get to the Younger analysis even because without a predicate federal constitutional right, the injunction goes away. But you could disagree with us on the federal constitutional issues and still vacate the injunction. And that would be on Younger grounds. And so they are independent in that sense, which is that you have independent authority under 1292A to consider all of the reasons why the Court entered the injunction. And you can reverse Younger abstention on those grounds. And you can do that even if you agree that there is a federal constitutional right at stake, because even with the federal constitutional right at stake, they have not demonstrated such irreparable harm that that right cannot be protected through litigation in a State criminal prosecution. But on the free exercise issue, if you agree with us, then the injunction has to be vacated regardless. Scalia. There is a little procedural wrinkle, is there not, that for pen and appellate jurisdiction, if we look at the dismissal, we would apply 12b-6. If we look at whether or not free exercise is a sufficient predicate for an injunction, then we are looking at it as essentially a trial. We are not constrained by 12b-6, right? I think that is right, Your Honor. And I would point this Court to the Am-South case, which grappled with a very similar issue, which is how do we weigh the free exit? What standard are we applying for the free exit for the sort of the merit, the motion to dismiss issues when we are up on a 12b-6 and sort of an interlocutory anti-suit injunction? And basically, what I think the district court did here was apply something like a preliminary injunction standard for the purposes of the anti-suit injunction with respect to the free exercise issues. So I think in some sense, when you are trying to figure out whether there is a Federal constitutional right for the anti-suit injunction, you are not, I think, cabined to the motion to dismiss standard. But if you were then to exercise, if you thought you needed pen and appellate jurisdiction to get to the 12, just to do the sort of the procedural step of overruling the motion to dismiss, I think then you would be restricted to the complaint. It obviously gets a little bit blended together here, given the interesting posture of the case. But I think either way, under any standard, their constitutional claim fails. Counsel, can I ask you about the free exercise claim? As I understand it, the 2024 Psilocybin Act in Utah is the only exception here that allows for possession and use of psilocybin in the state of Utah. First of all, is that accurate? There have been some changes to the law recently. Obviously, my friends have submitted supplemental jurisdiction about the veterans program that the state has since created. But for purposes of the law in effect that the district court was reviewing, that was correct. It was a highly regulated medical exemption that allowed clinical research into the safety and potential therapeutic benefits. All right. So I'm not 100 percent clear. I understand how that 2024 act worked. So you're saying it was sent to medical facilities. Did it allow for sort of any official to have individual discretion as to who they would permit to possess or use the substance? No, Your Honor. What it essentially allowed was at that time, the Intermountain and the University of Utah to create essentially clinical therapeutic trials where people could come in if they qualified for the therapeutic program. And then licensed medical providers would be making determinations as to whether somebody would be safe for that person to participate. And then in conjunction with that, the program could go forward. But the exemption itself didn't require, did not allow, did not discretionarily allow some universities and others. It's just if you were Intermountain or not, or Intermountain or the University of Utah to participate in the program. Well, as you just described it, then, as you know, we're thinking about general applicability. Sometimes we have to decide whether or not the activities are comparable. Why doesn't what you just described, other than it goes first to the hospital writ large, but then once it gets there, like the authority to allow possession to use the substance, as you describe it, sound a whole lot like how the plaintiffs have alleged here that they are allowing possession use and that they have people who are prescreened for safety, that they take adequate measures to protect the substance. So are these comparable? They are not, Your Honor, for a bunch of reasons. The first is the purposes of the research exception is just that research into determining whether psilocybin is even safe to use and whether there are any potential therapeutic benefits. Their singularism is essentially skipping that step, assuming its safety and therapeutic benefits and its benefits, and using it without oversight or any, without any oversight or regulation. Second is the context. Hospitals are subject to scores of background regulations regarding hygiene, sourcing, dosage, and other safety procedures. There's also a, there's also the why it's comparable. It has a protection for patients, which clinicians are subject to civil liability. Medical practitioners are subject to a licensing, licensing punishment by DOPL if there's something that goes wrong. None of that pertains in singularism, which is why it's not remotely similar. Your Honor, I see my time is, is at four minutes. I would like to save the rest of my time for rebuttal. Paul, turn off for a clock, please. Thank you. Judge Federico, do you have any other questions? I do, yeah, but I don't want to take all the questions. Okay, go ahead. You're not being cheated out of your rebuttal. Thank you, thank you. I also wanted to ask you, you said a moment ago, kind of jumping to the anti-suit injunction, and you said, well, the record here is not indicative of bad faith, but, I mean, there is, I think, some record of bad faith that's compelling in that singularism, as I understand it. They open this facility, they invite local officials to come inspect and say, here's what we're planning to do. You are free to come in and observe. And, you know, maybe we could, I think it's sort of inferred that they would work with law enforcement, if needed, to maybe make some changes to their program. But then, not only was that declined, but the state sends in an undercover agent to infiltrate what they're doing when they had invited you in. And then you sent, or the locals sent a letter to the landlord to evict them. And then you wait over five months to file criminal charges, and it's then after you've lost at the TRO hearing. You see how this all builds towards a finding of bad faith. And I think maybe our standard of review here is abuse of discretion. So how can we find abuse of discretion on that record? A couple of your honors. And I'll start with the last thing you said, which is you said the standard of review is abuse of discretion. That's incorrect, your honor, respectfully. The standard of review is de novo. It is the finding of bad faith, a question of law or fact? It is a question of law, your honor. And what's your authority for that? There are numerous cases. I think that Courthouse News, for example, I think Courthouse News, and I may be blanking on other sites that talk about it, were specifically cited in our reply. I will direct you to our reply brief that provides sites about why bad faith is a legal determination. But even if it were not, I think this amounts to clear error. And so I'll get to each of the specific instances here that you have, that you've pointed to. And I would make two points, your honor, which is that you could accept every fact that the district court pointed to and the sort of negative inferences it drew from those and still come to the conclusion very clearly that this is not bad faith. Because these cases do not come within the realm of proximity to the types of maybe under five cases that have found bad faith. And almost all of those cases also had supporting evidentiary hearings, which of course we didn't have here. Well, I'm sorry. You go ahead and then I want to quiz you about what you just said. Keep going. The second point, your honor, is I would also, I think that there is a sort of a more generous inference for each of the sort of examples that you gave. And so, for example, you mentioned that we waited until after the TRO to file criminal charges. I would say that the search warrant was executed before the criminal charges and then we responsibly waited and even conferred and double checked with the district court to make sure that it was not enjoining a criminal prosecution before we brought charges. So rather than just sort of ignoring the judicial process, we checked in to make sure that it was permissible. I think the fact that it took a little while for us to bring criminal charges is not a sign against the criminal process, but in benefit of it because it shows that the state took its time. It actually wanted to do the work, the research to make sure that this was an appropriate instance in which to bring criminal charges. And again, that goes back to the point about the purposes of Younger, which are to protect state criminal prosecution and to prevent interference with the state court. And again, we're not seeking to prevent the federal court from going forward here. We're simply saying do not interfere with a separate state criminal prosecution, which the court itself initially said that it was not enjoining. You also said this in your reply brief, I think, on page 28, that the district court didn't have a hearing on bad faith. That's not entirely true, is it? Because the court did have a hearing on the Anti-Injunction Act. And, right? It had an oral argument, Your Honor. Right, it had an oral argument, and nobody stood up and said, and there was argument about the bad faith and the irreparable injury exceptions, and nobody stood up and said, you know, I'd like to call a witness. I'd like to present a declaration. I'd like to present an offer of proof.  Nothing was to stop anybody. I mean, right? Everybody had an opportunity to present whatever evidence they wanted. And maybe it's not of earth-shattering importance, but I questioned that in your reply brief, and so I just wanted to ask you about that. Yeah, two points, Your Honor, which is I think that if you look at the two Phelps cases, what those cases I think are really getting at is an evidentiary hearing dedicated to bad faith, which was also I think what was going on in the Fifth Circuit case that we cited that recently found bad faith. But I would put it this way, which is there was oral argument on the anti-suit injunction, and it's true nobody stood up with evidence at that point, but I think that that means that the inference cuts against the plaintiffs here, because it is very clear on the Phelps cases that the burden is on them to prove bad faith, and they have just not gotten to that level under any standard or any case that has recognized the bad faith exception.  All right. David, do you have any questions? David, do you have any questions? No. All right, thank you. May it please the Court, my name is Tanner Bean representing Appellees here. Your Honors, this case is before you today because of the government's choice to forego its state interests in keeping state issues in state hands, remove this case to Federal court, and urge the District Court to decide the constitutional merits of this case, which the government continues to do today on its free exercise question. I want to hit three points, Your Honors. The first is the decision tree concept that my friend raised. Second, younger waiver, and then I'd like to talk about the free exercise questions if Your Honors don't direct otherwise. On the decision tree, we think that, yes, there is certainly a way for this court to reach a decision without getting to the free exercise questions as much as singularism would like to vindicate its religious liberties here. And... Do you agree that if we find we could make a finding on free exercise that would negate the need to reach younger at all? I think that's putting the cart before the horse here, Your Honor. I think that it is possible to do that, certainly. I think it gets into the questions of what the proper standard of review is for that. We would advance that it's the motion to dismiss standard of review, the 12B6. Why? We think that for the motion... Because that's only if we entertain a pen and a bell of jurisdiction. The predicate for the injunction was the free exercise clause. So the free exercise clause seems to bear on this, letting me to interfere with my first question.  So I just wondered about that. Why do you say that? Yeah, and this gets into an interesting question about the interaction of the Anti-Injunction Act, younger, and what the requirement is for a merits showing at that stage. Now, it's not clear from really any of the cases that have been cited at the court, and I'm not sure it's a question or an issue that's been decided by this court, of proof that the court needs to decide, whether that's a motion to dismiss standard of proof, whether that's a preliminary injunction standard of proof, because the questions behind the Anti-Injunction Act and younger are inherently predictive. We are predicting here whether the federal rights at issue, the federal proceeding that's adjudicating those rights is going to be threatened or frustrated, is the language that the cases use, by a state court proceeding. And so necessarily we would advance that it does not have to be rising to the level of a preliminary injunction standard that certainly could be satisfied by a motion to dismiss standard, or something perhaps even less. Okay, thanks. Forgive my interruption. Judge O'Neill? I'll return to the decision tree question, if your honors are happy with that. And the reason I say that this case can be decided on the anti-injunction issue and the court should proceed no further is one, because in opposition to Singularism's motion to abate, the government in fact told this court that that's precisely what it could do, saying that it could decide the anti-injunction question without wading into the questions of free exercise. We think that's true here primarily for two reasons. First, the Anti-Injunction Act. We have talked about how Section 1983 operates as an expressly authorized exception to the Anti-Injunction Act. That links up to what your honors' questions were about the free exercise questions. Singularism also believes there is an independent source for the Anti-Injunction Act authority, and that is the removal statute in this case, as we get into Younger and the bad faith analysis and the waiver question as well. However, in that context, the removal statute provides, of course, defendants an opportunity to take a case which was originally filed in state court and take it to federal court. When they do that, the federal court then necessarily needs to protect that federal adjudication that defendants have brought to it. Now, this court, or the Supreme Court in the Kansas Public Retirement Employment System said that removal is an expressly authorized exception to the Anti-Injunction Act, and I don't understand the government to disagree with that. What I understand the government to disagree with is that removal statute only operates in one way. It only allows the defendants to have to have federal rights to protect, and therefore the state, or therefore the federal district court can only use an injunction protecting defendants. When they, when there was a removal, there was no state court prosecution. That's correct, Your Honor. So you're saying that, well, let's just say it stayed in state court, and there was no removal. Under state law, can a state civil court enjoin a parallel state criminal case? Yes, Your Honor. We have argued that it can. Have you cited any, I don't remember that in your brief, I don't remember it ever being discussed, but do you have it, maybe I overlooked it, but do you have any cases under state law that says a state civil case can enjoin a parallel state criminal case? Yes, Your Honor. In the brief there is contained, I believe, two cases, and I'm forgetting the names off the top of my head, but it will be contained into the anti-injunction portion of the brief. Now, even if that weren't true, Your Honor, and there were still these kind of dueling proceedings, there would be a question of, what do we do in that situation? And my point I'm making about the removal statute operating as an anti-injunction exception that is independent from the free exercise questions is that the analysis applies here. If you look to, I believe it's the third, or the Third Circuit's decision in Davis International, they said there that, quote, a plaintiff's fraudulent attempt to subvert the removal statute implicates the expressly authorized exception. Why does it matter? Because I assume that the only reason you're, because obviously everybody agrees that 1983 does expressly authorize the action, and so I assume that your only reason is sort of belts and suspenders is removal is as a grounding for your waiver argument. I think that's accurate, Your Honor. So you're saying that, okay, well, once I remove the federal court, and I assume that you're right, that a state civil case could have enjoined a state criminal case, that now I'm in federal court, that I have waived anything that I could have imagined in the future. I could have imagined that there was going to be this criminal prosecution, and since I took this into federal district court, maybe didn't even know there was going to be a state criminal prosecution, I somehow have waived the imagination, you know, something that could have possibly happened. That seems really quite extraordinary when you talk about waiver as a knowing relinquishment, a relinquishment of a known right. Yeah, and I do think these issues blend together with the Anti-Suit Injunction Act issues and Expressly Authorized Exemption and getting into the Younger Waiver. And so I'll move to that point with making my last point as to the Davis International case, which is that there doesn't seem to be any policy reason by which a federal court can't enjoin subversion of the removal that is taken by a different party that did not remove. In this case, we have a highly unusual circumstance where the government is trying to subvert its own removal by increasing or creating a case that litigates precisely the same issues. And this links over to the Younger analysis and the waiver analysis here. There are two methods by which this court can find waiver. It's not simply removal, although that's a very easy and clear-cut way to do that. And there are a variety of cases which have been invoked before this court for that purpose. But there is also another exception, and this is perhaps the more clear, that there has to be an express waiver, an express urging to the federal district court that we, the government, want you, federal district court, to decide the constitutional questions. And that's what happened here. And I'd point your honors to one specific point of the record that makes this explicitly clear. At volume three, page 226, this is in the reply brief in support of defendant's motion to dismiss. They say, quote, defendants want this court to address the federal law questions. I don't know if there can be a more express waiver than that or a more express urging to the federal district court to decide these constitutional questions. And on the backdrop of that statement, there was a zero hearing, for example. Volume seven. You're saying, I want to make sure I get this right, you're saying that what they told the district court once it's already in district court is they said, we want you to decide this once it's already in district court that that's somehow an after-the-fact waiver of the right to seek an injunction? Under the Anti-Injunction Act? I don't think it's an after-the-fact waiver, Your Honor. I think when the government removes to federal court one and also urges the federal court to reach federal questions, both of those things are present. Both independently indicate waiver of younger abstention principles. And the reason that's the case is because the underlying foundation for both the Anti-Injunction Act and abstention is federalism and comedy. We're trying to respect state interests. We're trying to give them the leeway of a separate sphere to litigate their own interests. But where the government gives those up, both by removing to federal court and saying, we would like you to decide this question instead of our own separate sphere, and also where we're telling the court not just by the mere procedure of removal, but also by specifically asking you to proceed to the constitutional merits, there are no more interests. So did they just waive it just a few minutes ago by asking us to decide it? Yes, Your Honor. We do believe that. And that's partially the reason why we think it's simple for this court to avoid the free exercise questions. If there's no question of younger waiver or abstention, there's no reason to get into younger's elements. There's no reason to get into the younger bad faith inquiry. Although if we do get there, we think that's well supported with a finding of bad faith in the record. And we can talk about that further. But on this record, where we have both independent lines of waiver converging here, and there are only a few cases where we have examples of that, but this is a highly unusual circumstance. Do you, and I know you argue that bad faith is a question of fact, but do you, would you, do you agree with the idea that even for fact-intensive questions, whether or not the district court relied on the right things as indicia of bad faith, that that is itself a subsidiary question of law? If the judge found that there was bad faith in things unrelated to the impetus for the state criminal prosecution, for example, if she decided that you're wrong in looking at litigation conduct, asking too broadly in discovery, for example, in a civil case as an indicia of bad faith in a criminal prosecution, that would be a, that would taint the factual finding, right? Yes, Your Honor, I actually don't think we have much disagreement with the government on what the actual standard of review is for the injunction here. It is a nestled standard of review, certainly. I'd say at the very lowest where we're making factual findings, those factual findings are entitled to a clear error standard, but once those factual findings are applied to a piece of the younger analysis, whether that be a younger element or a younger exception for bad faith, for example, it becomes a mixed question. Well, then how could, then how can, let's just take one example. How can a defendant, defendant counsel standing up in a civil case saying, Judge, you know, these discovery requests or singularism, I suppose, say, well, the defense counsel is asking too broadly in discovery in this civil case. How is that a relevant characteristic for whether or not the prosecutor, Mr. Gray, in the state criminal prosecution was acting in bad faith based on what defense counsel says in a, you know, in a, in a discovery dispute in federal court? Your Honor, I suppose this gets to the question of what sorts of factual findings are actually necessary to support the younger exception. That's actually not what I'm asking. I'm asking whether or not the judge made a legal error in looking at conduct in a civil case on a civil-related matter as some sort of relevant consideration to say that the impetus for the state criminal prosecution was in bad faith. We certainly don't think the court made an error in that circumstance. We think these observations of, they're essentially procedural facts in the case contributed to the district court's decision and record of bad faith here. We don't think that's improper. Certainly, the court could have had a more extensive hearing on bad faith called Mr. Gray,  and the parties could have asked questions and made some sort of factual findings here. We don't think that precludes the district court from making factual findings or inferences from procedural anomalies. I totally get that. Poor question. The question is, why do you say that? Why? How? Can conduct by a civil lawyer in a civil case, how can that be independent evidence of bad faith in a separate criminal prosecution in a proceeding in a different sovereign in a different courtroom? Perhaps I'm misunderstanding your question, Judge Bachrach, but what I'm understanding is that perhaps your inquiry is whether can we only look for the bad faith exception or younger to the conduct that's happening in the criminal prosecution, the fact of it being brought, the criminal prosecutor, et cetera, or can we look both to the criminal prosecution's events situation and the related situation in the civil case? Is that correct? Well, yeah. As close as I'm going to get, maybe. This is good enough. Yeah. So how can you look at the latter? I think you can certainly look at the latter. There has been kind of an ongoing back and forth about the unity of interest of these defendants, the state of Utah, and the municipal defendants we have presenting here today. We think there's a strong unity of interest between those things. For example, there would be no reason for the civil counsel for the municipalities to make inquiries about the possibility of a criminal prosecution if they were not asking those questions on behalf of the state. We think those things are clearly applicable here as they go across with those interests. Now, Your Honors, I see my time is up here, but if you do have questions...  I took up too much of your time, so I'm going to give you another... You keep talking until that turns into one minute. Okay. Thank you. I will just speak to, very quickly, the free exercise questions. I think the characterization of the Phil Sivan Act by my friends is completely inaccurate. It is not a highly controlled, regulated medical exception. It is not a research exception. It is the creation of a stand-alone, independent, and unique behavioral health treatment program. There is significant discretion vested in these organizations, presently the University of Utah and IHC, which this year the Utah legislature added to private educational universities such as those like BYU or Westminster University that can now operate within their discretion and decide to provide these individuals as a treatment, not a research basis, for these individuals. There is significant discretion in the decision whether to do so or even to create such programs. All that needs to be decided by these organizations is whether, in their own view, it is supported by significant medical research. Right? And what that standard is is unclear. And this, the reason I bring this up is because... Now you need to just finish up. No, I am getting to that point. If your honors would like, I can terminate that question. Fire away. Yeah, so this last point about some recent changes in Utah, do you agree that's not under our review because that was not part of the district court's decision? I don't agree with that. Okay. And the reason I agree with that is... I don't agree with that is because it goes to this question of government state interest. What is the government state interest that we are analyzing here? In the government's reply brief, I think at page 11, they say that the interests are two. One, drug diversion of psilocybin to illicit markets and two, drug abuse of psilocybin and its related health effects. And in determining whether... No, I guess what I'm asking is, as I understand it from the party's presentation today, is since this case was before the district court and the district court's order and free exercise analysis, there have been changes to the program of the 2024 Psilocybin Act. Is that right? That is right. Okay, so why wouldn't we then... or why would we make a determination in the first instance and not send it back to the district court to say, well, the facts have changed, so think about it again. And we would be happy with that result, Your Honor, if you think that would be something that would be helpful. I don't think it's necessary here to do that. I think this court can affirm if it does reach the free exercise question because it undermines the state interest here. The larger this program becomes, the more options that are given to more people and universities. Yeah, but again, you're asking us to take into account state interest and state activity that occurred after the district court issued its ruling, right? Yes, and I don't think that's a problem because the stated interests are those that are asserted here by the government. I would even say that the asserted interests in the reply brief are slightly different from how they were characterized in the government's opening brief. That seems to be an evolving question, and whether we're looking at questions of asserted government interest, I think the evolution can continue. Can I ask one more? Yeah, one more. And so this sort of line-drawing issue, of course, comes up in Smith and continues today, but the Controlled Substances Act always worked this way wherein it doesn't allow persons to possess or use certain substances, but it does have carve-outs for medical providers. I mean, that's why it's controlled. So if your reading is correct that the 2024 Silas-Ivan Act has created this exception and that your free exercise rights now are such that you can engage in the same type of possession or use for different purposes, but possession and use of the same substance now, based upon that exception from 2024. Let's say that that's correct, but what would stop, then, any group in Utah from saying, well, we have a sincerely held religious belief and we want to use a substance as a sacrament and furtherance of our religious belief to contribute to our religious insights? And here we're talking about Silas-Ivan, but why couldn't it be morphine or fentanyl? What's the limiting principle to that? Yes, Your Honor. The limiting principle is found in Tandon. Tandon articulates how this court is supposed to do that analysis, and this court has recently done that similar sort of analysis in the St. Mary Pathak Parish case, which, of course, is on appeal before. And so I think it's important for this court to think about what that limiting principle is. And the question and the analysis that Tandon prescribes is that we are looking at activities by these organizations, whether the activity engaged in by IHC, the University of Utah, universities, as compared to the activity engaged in by Silas-Ivan, bears a comparable risk to those particular stated interests by the government. Here, again, drug diversion and the drug abuse issues. Now, that's why I think it is a limiting principle. Certainly many organizations and, you know, insincere, sincere believers alike could make claims like this, and, of course, there are other threshold factors they'd have to get through, such as sincerity, religiosity, which are not at issue in this appeal, to get there. But they'd also have to conduct this risk analysis. There might be many circumstances in which the risks are simply not comparable. But here they are highly comparable. Then why, if they're so comparable, then why did your release form say the advice from Singularism staff, despite being informed, is not a substitute for licensed and qualified professional medical advice, and we acknowledge their clinical advice supersedes our spiritual advice in medical and physical matters? Why did you say that if the directors of Singularism are just as qualified as the administrators at Intermountain and the University of Utah hospital? Your Honor, I think that makes it more comparable than less. And the reason that is, is because we are looking at a religious organization that, from Singularism's view, is probably the most possibly comparable to a health organization that's still a religious organization. Then why did you tell everybody, listen to them, not us? Why did you tell them that what we say is not a substitute for what they say? Singularism is founded upon the principle of accepting both religious and scientific influence, that there is not an inadequate distinction between the two. They will take full avail of both clinical principles as well as professionals in the area to make that case. So, and that's, that's how they have operated as well. If they feel like there is an issue where a medical provider could help them, could provide assurances of safety, could make sure that there are not issues of public health or drug abuse, certainly they are going to use those things. And so, on the facts presented, where we have the complaints saying that there is literally not an ounce of psilocybin that has ever left the sacred center, which goes to the drug diversion interest, and also on the point where there has been no indication of any drug abuse, although I'm not sure quite what the government means when it says drug abuse, because psilocybin is not an addictive forming substance, the complaint just simply doesn't have those facts. And on the... Okay. And this is, we're so over time, I don't want to open up a hornet's nest, but we, you keep referring to the complaint and the 12b-6, and that's great if we entertain pen and appellate jurisdiction. To decide whether or not the injunction was improper or not, that is not constrained by 12b-6, correct? I would grant that it is a question that this circuit has not clearly answered what the standard is for the anti-suit. Well, you know, unless, I mean, what would be the logic? I'll just, I'm going to point to you, the jurist of the world. What jurist of the world? How in the world would you say, I am going to enjoin a criminal prosecution based not on what the facts show, but what we allege in the complaint? And you can do a preliminary injunction, but, which is, even a preliminary injunction is not constrained by the allegations of the complaint, but for a, the judge issued a permanent injunction, and so if you're saying a permanent injunction is constrained by the allegations in the complaint, put aside the cases, what would be the logic of that? Yeah, two points, I think, Your Honor, and then happy to be done as you'd like me to. The first is, I'll just return to that predictive analysis. This is inherently a predictive analysis about what the state court proceeding will do to the federally protected rights, and this is where we get to this idea of Younger, which contains a lot of statements about irreparable injury, about bad faith, about the avoidance of duplication of proceedings, and it's really a predictive analysis, will that state court proceeding in and of itself compromise those rights, or is it a form that's available enough that those can be vindicated? We don't think that in the circumstances presented here, that will be the case, and part of the reason is,  as the Church of Direct Experience is brief, and the recent decision in the First Choice Women's Health Care case has come out, that there's an associational interest at play here that simply can't be remedied, that the mere ongoing fact of the criminal case proceeding is a irreparable threat, irreparable injury that cannot be avoided. Certainly some things could be litigated in the state court proceeding as defenses to the constitutional marriage just fine, but not everything in these circumstances. Thank you. Thank you, Your Honors. A couple of points, Your Honors. I plan to start with free exercise. The line the State drew is based on risk. Unregulated use of psilocybin without any government oversight or controls is just fundamentally incomparable to the use for exploratory and research purposes in a hospital governed by regulations, government oversight, and subject to civil liability from which they have exempted themselves. It is not a secular religious line. It is a risk-bearing line that furthers the State's interest in ensuring medical research to see whether psilocybin is safety in the first place. They are trying to jump to the conclusion that it is. Now, I think, Judge Backreich, you hit it right on the nail when you said that their own statements demonstrate why the two-state religious organization and the hospitals are not comparable. Their own statements say that it is not. Their advice is not a replacement for medical activity. You were also correct, I think, in saying, are you limited to the 12D6 record or can we actually look at the facts? And what the facts showed were that when the State went to execute the search warrant, the psilocybin materials were stored in a hodgepodge of materials scattered around the office. Certainly, that is not the way they would be stored in a highly regulated medical context in which they have to be received from a pharmacy under regulated supervision. Also, there were also, as the preliminary injunction, I'm sorry, the TRO hearing revealed, there were also sourcing questions. Their source came from someplace in Oregon where they're sure that it was tested for something but they don't know what and it was delivered by a person named Inga, last name unknown. And so, there are just very clear differences in a regulated and unregulated use of psilocybin which means that these are just not dealing with apples and apples here. We're dealing with apples and oranges. So, we never even get to the next stage and that's why I think St. Mary's, for example, is just not going to be relevant. City of Fulton is not, I'm sorry, City of Philadelphia is not relevant. There, we were dealing with comparable institutions, foster care agency, foster care agency. We were dealing with a preschool and a preschool. Here, we're dealing with a religion and a hospital. Is it a mixed question of law and fact? In other words, if there's differences, doesn't it also involve a subsidiary factual question of weighing the risks and how would we, let's say, as a legal body be in a position to balance the public health risks of singularism versus intermountain administering psilocybin? That's a great question, Your Honor. I don't think that the case law actually resolves that. If you look at City of Philadelphia or Fulton Tandon or any of those cases, I don't think they actually talk to that question in part because the interest in those cases were not discrimination, were non-discrimination, not safety risks. But to the extent there is an entity that made and balanced those decisions, it is the legislature. And the legislature made the determination that we are okay with controlled, highly targeted medical research to determine whether there are safe therapeutic purposes of psilocybin. It is not a judicial termination that can be second guessed. Counsel, can I also make sure I understand your position because I'm I think I'm confused by the argument about the changes that have been made to the program since this case was litigated below? I thought I heard you say it's not before us that we shouldn't consider it. Obviously, opposing counsel just said, no, we should consider it. But what is your position on that? I have two, Your Honor. The first is that I don't think that this court can consider it because it wasn't before the district court and there's no way that the court could have erred based on information that the district court's decision was not based on information not before it. Now, putting that aside, I think all of those changes to the law support us because what they show is a continuation in the state's very principled line drawing which is that we are going to allow highly regulated targeted medical research into the benefits of psilocybin. That may be a great argument before the district court but if your first point holds that it's not something we can review then whether it supports you or doesn't support you doesn't really matter for us, right? That's great. My point is just if you disagree with me we still win. All right. Thank you. This matter is submitted. Very well presented by both sides. Thank you both.